# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4314 | **DATE** | 5/24/2002 |
| **CASE TITLE** | Wafra Leasing vs. Prime Capital, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 6/21/02 at 10:15 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ehmann and Landeck's motion to dismiss is denied. Smithburg, Walter, and Friedman's motion to dismiss is granted as to Smithburg and Walter, but denied as to Friedman. B&S and Bischoff's motion to dismiss is granted as to B&S, but denied as to Bischoff. KPMG's motion to dismiss is granted in part with respect to the May 4 valuation letter, but otherwise denied. Enter Memorandum Opinion and Order. At the status hearing the court will set discovery and trial schedules in this case. Prior to the status hearing, the parties shall confer and provide the court with a **written** proposed discovery schedule. Any motion for summary judgment must be filed within 14 days after the date set in the scheduling order for close of discovery. Any extension of discovery will not extend that date.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 7 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 28 2002 | |
| | Notified counsel by telephone. | | date docketed | 86 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 5/24/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

WAFRA LEASING CORPORATION 1999-A-1, )
)
    Plaintiff, )
)
v. )
)
PRIME CAPITAL CORPORATION, PRIME )
LEASING CORPORATION, PRIME FINANCE )
CORPORATION 1999-A-1, PRIME FINANCE ) No. 01 C 4314
CORPORATION 1999-A-2, KPMG LLP, )
BISCHOFF & SWABOWSKI, LTD., MARK )
BISCHOFF, JAMES FRIEDMAN, VERN )
LANDECK, THOMAS EHMANN, WILLIAM )
SMITHBURG and JOHN WALTER, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Wafra Leasing Corporation ("Wafra") invested in a securitization of financial contracts by Prime Capital Corporation and Prime Leasing Corporation (collectively "Prime"), and its investment went bad. Wafra sued Prime and several of its officers and directors, as well as KPMG L.L.P., Prime's auditor, and Bischoff & Swabowski ("B&S"), its attorneys. I have already decided the defendants' motions to dismiss on the federal securities claims and some of the state law claims. *See Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, No 01 C 4314, 2002 WL 460826, *1 (N.D. Ill. Mar. 26, 2002). While those motions were pending, Wafra filed an amended complaint, adding Count X, a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("the Act"), against all of the defendants. Ehmann and



Landeck move to dismiss, and Smithburg, Walter and Friedman adopt and supplement their motion. KPMG also moves to dismiss, raising several of the same arguments as the individual defendants. Bischoff and B&S address their objections to Count X in a supplemental memorandum in support of their earlier motion to dismiss. I grant the motions in part and deny them in part.

I.

The facts of this case were set out in detail in my previous opinion, see *Wafra*, 2002 WL 460826, at *1-2, and I repeat them here only where necessary to decide issues presented by the motions to dismiss. For the purposes of these motions, I take the allegations of the complaint as true, draw all reasonable inferences in favor of Wafra, and dismiss only where it is clear that Wafra could prove no set of facts consistent with its complaint that would entitle it to relief under the Act. *First Ins. Funding Corp. v. Federal Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002).

II.

The individual defendants and KPMG argue that Wafra lacks standing under the Act because it is not an Illinois resident and because it has failed adequately to plead a "nexus" between its claims and consumer protection concerns. The Act provides a cause of action for "[a]ny person who suffers actual damages as a result of a violation of this Act committed by any other person." 815 ILCS 505/10a(a). The Act is violated when a defendant uses or employs

2

"any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact" in the conduct of trade or commerce with the intent that others rely on the fraud, though no person need actually have relied on the fraud. § 2. "Person" is defined to include corporations (foreign and domestic). § 1(c). "Consumer" means "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his business." § 1(e). "Merchandise" includes both intangibles and services. § 1(b).

The purpose of the Act is to "protect Illinois consumers, borrowers, and businessmen against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Scott v. Association for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1017 (Ill. 1981). The Illinois Supreme Court has never expressly considered whether non-Illinois citizens have standing to sue for violations of the Act, although it implicitly approved of their standing where there was a significant connection to Illinois and many of the acts making up the claim occurred in Illinois. See *Martin v. Heinold Commodities, Inc.*, 510 N.E.2d 840, 847 (Ill. 1987) (certifying multi-state class under the Act). An Illinois appellate court recently declined to certify a nationwide class that included consumers who lived outside of Illinois and purchased the defendant's product in another state because there was "no

contact with Illinois." *See Oliveira v. Amoco Oil Co.*, 726 N.E.2d 51, 61 (Ill. App. Ct. 2000), *appeal allowed by* 734 N.E.2d 895 (Ill. 2000).

The defendants ask me to read *Oliveira* to preclude *any* non-resident from suing under the Act, regardless of where the trade or commerce occurred. I have cited *Oliveira* for the proposition that the Act "does not apply to consumers outside Illinois or business conducted outside Illinois," *The Alcar Group, Inc. v. Corporate Performance Sys., Ltd.*, 109 F. Supp. 2d 948, 952 (N.D. Ill. 2000), but that case involved "alleged trademark violations that occurred entirely abroad," *id.* at 949. *See also General Elec. Capital Auto Fin. Servs., Inc. v. Phil Smith Chrysler Plymouth Jeep Eagle*, No. 00 C 762, 2001 WL 1223537, at *2 (N.D. Ill. Oct. 11, 2001) (Grady, J.) (holding that plaintiff lacked standing where it did "not allege that the purported fraudulent trade practices affecting consumers were conducted in Illinois or that such practices affected Illinois consumers"). Here, however, Wafra purchased the Owner's Certificate in Illinois, in reliance on misrepresentations made by the defendants in Illinois, and alleges that it was injured by the cover-up of a fraudulent "diversion, misappropriation and kiting scheme" that occurred entirely in Illinois. Although Wafra is not an Illinois citizen, it is a consumer of Illinois products and services, and thus has standing to sue under the Act. *See Man Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 568, 575 (N.D.

4

Ill. 1999); *Garner v. Healy*, 184 F.R.D. 598, 604 (N.D. Ill. 1999).

KPMG and the individual defendants also argue that Wafra has failed to allege that the conduct that led to its injuries "involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996). The Seventh Circuit held that Illinois courts and the courts in this district "have uniformly held that claims under the Act must meet the consumer nexus test," but it did not distinguish between consumer and non-consumer plaintiffs. *Id.* In *Athey*, the plaintiff was not a "consumer" as defined by the Act, see *id.* at 432, and all of the cases that it cited involved non-consumer plaintiffs. *See Lake County Grading Co. v. Advance Mech. Contractors, Inc.*, 654 N.E.2d 1109, 1115-16 (Ill. App. Ct. 1995); *Scarsdale Builders, Inc. v. Ryland Group, Inc.*, 911 F. Supp. 337, 340 (N.D. Ill. 1996); *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 322 (N.D. Ill. 1995).

*Athey* was decided on summary judgment, which involves a stricter standard than I apply on a motion to dismiss, where a plaintiff is not required to plead evidence or match facts to every element of its claim. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Moreover, *Athey* did not involve a consumer plaintiff, which Wafra claims to be. The Act applies to securities transactions, *see Lyne v. Arthur Andersen & Co.*, 772 F. Supp. 1064,

5

1068 (N.D. Ill. 1991, and Wafra alleges that it purchased the Owner's Certificate (an "intangible") and contracted for the servicing of the financial contract ("services"), Compl. ¶¶ 39, 41, so it contracted for the sale of "merchandise" under § 1(b) of the Acts and is therefore a "consumer." § 1(e). Whether I consider Wafra, as a "consumer," to be excused from the "more stringent standing requirements" for two non-consumer businesses, *see ASI Acquisition, LLC v. Rayman*, No. 01 C 165, 2002 WL 335311, at *2 (N.D. Ill. Feb. 28, 2002), or whether I consider its allegations that it is a "consumer" sufficient to satisfy the consumer nexus test, *see Commonwealth Ins. Co. v. Stone Container Corp.*, No. 99 C 8471, 2001 WL 477151, at *4-5 (N.D. Ill. May 3, 2001), this case is distinguishable from *Athey*. *Cf. DRL Enters., Inc. v. ePartners, Inc.*, 173 F. Supp. 2d 818, 820 (N.D. Ill. 2001) (reading *Athey* broadly to require consumer nexus allegation even when parties are not two non-consumers, but not describing the circumstances in which *Athey* applied). Wafra has standing to sue under the Act.

### III.

Wafra acknowledges that it was not a first-hand consumer of the services of KPMG and B&S, but it argues that the Act applies to their services. Legal services, including the "actual practice of law" as well as billing practices, are exempt from the Act, *Cripe v. Leiter*, 703 N.E.2d 100, 105 (Ill. 1998), so B&S cannot be liable for consumer fraud for its opinion letter. Accountants, however,

may be liable even where plaintiffs do not directly purchase their services, but receive them from the accountant's client in the course of a securities offering. *See Lyne*, 772 F. Supp. at 1068. Nothing in the Act requires that the plaintiff have purchased goods or services directly from the defendant. *Id.*

Nonetheless, Wafra must be able to satisfy the elements of a claim under the Act. *Id.* KPMG argues that Wafra could not prove any set of facts that would show that KPMG intended for Wafra to rely on its May 4, 1999 valuation letter. As I noted in my previous opinion in this case, the valuation letter was addressed only to Prime Leasing, Prime Financial, and Merrill Lynch, and stated that: "[t]his report is intended solely for the use of the addressees and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes." KPMG Ex. A at 1, 6.[1] I held that "no reasonable reading of the letter shows that Wafra was intended to rely on it," *Wafra*, 2002 WL 460826, at *17, so Wafra cannot state a claim under the Act. *See Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 754 (Ill. 1994) ("*Martin II*") (holding that, although plaintiff need not show that it actually relied on the defendant's statements, it must show "intent on the defendant's part that

---

[1] Although the valuation letter was not attached to the complaint, I may consider it without converting this motion to one for summary judgment because the letter was mentioned in the complaint and is central to Wafra's claim. *Help At Home, Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 752 (7th Cir. 2001).

7

plaintiff rely on the deception").

KPMG argues that Wafra's claim based on KPMG's 1997 audit is barred by the statute of limitations. Actions against accountants in Illinois, whether "based upon tort, contract or otherwise," must be "commenced within 2 years from the time the person bringing an action knew or should reasonably have known of such act or omission." 735 ILCS 5/13-214.2(a). KPMG argues that Wafra should have discovered the alleged fraudulent omissions as early as May 1999, more than two years before it filed the complaint, on June 8, 2001. I rejected a similar argument with regard to the one-year statute of limitations for federal securities fraud, finding that there were questions of fact that barred a determination, as a matter of law, that Wafra should have known about its injuries before June 9, 2000. *Wafra*, 2002 WL 460826, at *6. The same questions of fact prevent dismissal under the two-year statute of limitations here.

IV.

The individual defendants argue here, as they did in their previous motions, that Wafra cannot establish "loss causation"; *i.e.*, "that the investor would not have suffered a loss if the facts were what he believed them to be." *Martin II*, 643 N.E.2d at 747. Loss causation is distinct from mere "transaction causation," which means that "the investor would not have engaged in the transaction had the other party made truthful statements at the

time required." *Id.* The defendants argue that Wafra's injuries were caused by the alleged breach of the indenture agreement, and that the fraudulent statements and omissions that induced the sale related only to Prime's financial condition. I rejected this narrow reading of the complaint, holding that the fraud alleged was more than just failure to disclose Prime's failing finances, but included the failure to disclose the alleged diversion, misappropriation, and kiting scheme that compromised the "lock-box" account, and this is what caused Wafra's alleged injuries. *Wafra*, 2002 WL 460826, at *4. This is sufficient to allege "loss causation" at this stage.

Smithburg, Walter, Friedman and Bischoff also argue that Wafra has not pleaded fraud with the particularity required by Rule 9(b): "the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Bischoff merely repeats the argument that he made with respect to the motion to dismiss the allegations in Count I, which I have already held were sufficient to satisfy Rule 9(b). Compl. ¶¶ 84, 87-94; *Wafra*, 2002 WL 460826, at *15. Friedman ("who") is alleged to have participated in a meeting with Wafra at Prime's offices in Rosemont, Illinois ("where"), on December 11, 1998 ("when"), in which Friedman said that Prime never defaulted payments to its investors ("what"), but failed to disclose that, but for the diversion, misappropriation, and kiting of funds, Prime

9

would have been unable to pay its investors ("how"). Compl. ¶ 79. This is sufficient.

Wafra alleges that Smithburg and Walter were "control persons" for the purposes of federal securities law, Compl. ¶¶ 17-18, and that they were involved in the day-to-day management and overall direction of Prime in the preparation of the financial statements, which allegedly contained false and misleading statements and omissions. Compl. ¶ 100. Smithburg signed the 1997 and 1998 annual 10-K report, and Walter signed the 1998 10-K. This satisfies the "who," "what," and "when" components of Rule 9(b), but is insufficient to show how Smithburg's and Walter's signature on and implicit approval of the 10-K reports was false. There is no allegation that they knew, or even should have known, about the kiting scheme that the 10-K reports failed to disclose. *See DeLeon v. Beneficial Constr. Co.*, 998 F. Supp. 859, 866 (N.D. Ill. 1998) ("[A]lthough [the defendant] may have made the referral, absent any allegation that he knew [that the referred company] was a fraudulent entity, we fail to see how the referral could constitute a misrepresentation, lie or omission of material fact as ICFA requires."). *Cf. Petri v. Gatlin*, 997 F. Supp. 956, 974-75 (N.D. Ill. 1997) (holding that Rule 9(b) was satisfied where plaintiffs "alleged that the individual defendants 'were aware of and approved' the misstatements in the brochures"). That Smithburg and Walter were merely involved in the day-to-day operation of Prime is

10

insufficient to plead the "how" of the fraud under Rule 9(b).

V.

Ehmann and Landeck's motion to dismiss is DENIED. Smithburg, Walter, and Friedman's motion is GRANTED as to Smithburg and Walter, but DENIED as to Friedman. B&S and Bischoff's motion is GRANTED as to B&S, but DENIED as to Bischoff. KPMG's motion is GRANTED IN PART with respect to the May 4 valuation letter, but otherwise DENIED.

ENTER ORDER:

*Elaine L Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: May 24, 2002