# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4314 | **DATE** | 11/25/2002 |
| **CASE TITLE** | Wafra Leasing Corporation vs. Prime Capital Corporation | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant KPMG's motion to dismiss is granted in part and denied in part. Count eight is dismissed with prejudice. Defendants Smithburg and Walter's motion to dismiss is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | number of notices | | | 126 |
| | Notices mailed by judge's staff. | | NOV 2 6 2002 | | | |
| | Notified counsel by telephone. | | date docketed | | | |
| ✓ | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | | |

CLERK
U.S. DISTRICT COURT

02 NOV 25 PM 4:40

10 FILED-ED

| TH ✓ | courtroom deputy's initials |
|---|---|

Date/time received in central Clerk's Office

mailing deputy initials



| | | |
|---|---|---|
| WAFRA LEASING CORPORATION 1999-A-1, | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 4314 |
| | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| PRIME CAPITAL CORPORATION, PRIME LEASING CORPORATION, PRIME FINANCE CORPORATION 1999-A-1, PRIME FINANCE CORPORATION 1999-A-2, KPMG LLP, BISCHOFF & SWABOWSKI, LTD., MARK BISCHOFF, JAMES FRIEDMAN, VERN LANDECK, THOMAS EHMANN, WILLIAM SMITHBURG and JOHN WALTER, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant KPMG has moved to dismiss counts eight and eleven of the Second Amended

Complaint. Defendants Smithburg and Walter have moved to dismiss count ten of the Second

Amended Complaint. For the reasons set forth below, Defendant KPMG's motion is granted in

part and denied in part, and Defendants Smithburg and Walter's motion is denied.

## FACTUAL BACKGROUND

### A. General Background

Plaintiff Wafra Leasing Corporatin 1999-A-1 is a Cayman Islands corporation that was

formed for the purpose of holding securities investments issued by Defendants. (R. 89-1, Second

Am. Compl., ¶ 7.) Defendant Prime Capital Corporation, is a Delaware corporation. (*Id.*, ¶ 8.)

Prime Leasing, Inc., Prime Finance Corporation 1999-A-1, Prime Finance Corporation 1999-A-2

were wholly owned subsidiaries of Prime Capital. (*Id.* ¶¶ 9-10.) Defendant KPMG served as auditor for Prime Capital and its affiliates. (*Id.* ¶ 11.) Defendant William Smithburg was a member of Prime Capital's Board of Directors and the Board's Executive and Audit Committees. (*Id.* ¶ 17.) Defendant John Walter was a member of Prime Capital's Board of Directors and the Board's Executive Committee. (*Id.* ¶ 18.) Wafra alleges that both Smithburg and Walter "exercised control over the general operations of Prime and had the ability and power to direct and prevent the fraudulent conduct and statements of Prime at issue in this Complaint." (*Id.* ¶¶ 17-18.)

Prime Capital is a specialty finance company that originated and serviced financial contracts including equipment leases, loans and installment purchase agreements. From 1993 to 1999, Prime securitized its financial contracts to raise capital. Prime Capital formed special purpose vehicles ("SPVs") to which it transferred a pool of financial contracts. (R. 89-1, Second Am. Compl., ¶ 22.) The financial contracts consisted of equipment leases, loans and installment purchase agreements. (*Id.* ¶ 22.) The SPVs, in turn, would issue and sell promissory notes to third parties using the financial contracts as collateral. (*Id.* ¶ 22.) The proceeds from the financial contracts were used to make payments of principal and interest on the promissory notes. (*Id.*)

Under this arrangement, Prime Leasing serviced the financial contracts, including the pursuit of delinquent accounts. (R. 89-1, Second Am. Compl., ¶ 23.) Prime Leasing was authorized to act on behalf of the SPVs for the purpose of enforcing their rights and discharging their obligations in connection with such assets. (*Id.*) The securitization documents allegedly required that all rent payments on the financial contracts be deposited into a lock-box account,

2

remain separate from any other fund and be turned over to the securitization trustee within two business days. (*Id.*) The securitization documents further required Prime to instruct all payers on the financial contracts to make payments directly to the lock-box account, and if payments were misdirected, Prime was required to turn them over to the lock-box account within two business days. (*Id.* ¶ 28.) The money in the lock-box account was the property of the SPVs, not Prime, and was to be used for payment on the investors' notes. (*Id.*)

Wafra alleges that commencing in at least 1997 Prime began diverting and misappropriating a large portion of rent payments belonging to the SPVs by holding the funds for more than two days and commingling these funds with its own. (R. 89-1, Second Am. Compl., ¶¶ 29-30.) This diversion allegedly resulted in shortfalls of money required to be deposited in the lock-box account for the benefit of the SPVs. (*Id.*) Because of this shortfall, Prime allegedly kited misdirected funds from the next month's receipts to pay its investors, which created a shortfall for the next month as well. (*Id.* ¶ 29.) Wafra alleges that the diversion and misappropriation raised an inference that Prime was insolvent, and that it hid this fact from investors by kiting misdirected payments from the following month. Furthermore, the diversion precluded the SPVs from making monthly payments to the noteholders. (*Id.* ¶ 32.)

The focal point of the Second Amended Complaint is the 1999-A securitization in which Wafra invested. This securitization closed on May 4, 1999. (R. 89-1, Second Am. Compl., ¶ 36.) Wafra alleges that Prime Capital sold the 1999 financial contracts to two bankruptcy-remote SPVs that were owned and controlled by Prime Capital -- PFC-A-1 and PFC-A-2. (*Id.* ¶ 35.) Wafra claims that it relied on financial information from the 1997 10-K (audited by KPMG) because the 1998 10-K and corresponding financials had not been issued yet. (*Id.*

¶ 134.) Further, Plaintiff claims that it relied on a May 4, 1999 Letter from KPMG. (*Id.* ¶ 160.)

Wafra alleges that KPMG knew or should have known that investors such as Wafra would rely

on both the 1997 audit and the May 4, 1999 Letter. (*Id.* ¶¶ 135, 161.)

On May 28, 1999, Prime filed the delayed 1998 10-K with the SEC. (R. 89-1, Second

Am. Compl., ¶ 134.) KPMG's audit report of Prime Capital's 1998 financial statements, dated

May 20, 1999, was included with the 10-K. (*Id.*) The audit report was dated a mere sixteen days

after the closing of the 1999-A securitization. (*Id.*) KPMG disclosed in the audit that in 1999

Prime had transferred several million dollars to the SPVs that should have been transferred in

1998. On November 1, 1999, Prime announced that KPMG had resigned as of October 26, 1999.

(*Id.* ¶ 50.) Prime Capital noted that KPMG had brought to its attention "the existence of certain

irreconcilable differences between the account detail and the general ledger and information

included in the account detail which could not be substantiated. Many of these differences relate

to transactions that occurred in prior years. An adjustment to the consolidated financial

statements was not required by KPMG." (*Id.*)

In April 2000, the securitization trustee notified Prime that there had been several defaults

under the indentures and servicing agreements. (R. 89-1, Second Am. Compl., ¶ 54). On June 9,

2000, Prime announced that it would no longer be financially capable of honoring its obligations

to Plaintiff and other investors. (*Id.* ¶¶ 6, 55.) Prime also disclosed the misappropriation of

some of the funds. (*Id.*)

## B.    Procedural Background

Wafra sued Prime Capital, its subsidiaries, several of its officers and directors (including

Smithburg and Walter), KPMG, and Prime's attorneys for securities fraud under Section 10(b) of

the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, and for "control person" liability under Section 20(a) of the Exchange Act. Wafra subsequently filed an Amended Complaint, adding count ten, which alleged that Defendants, including Smithburg and Walter, violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 (the "ICFA").

Defendants filed various motions to dismiss the Complaint and Amended Complaint. On August 17, 2001, for example, KPMG moved to certain counts of the Complaint, and on February 4, 2002, KPMG moved to dismiss count ten of the Amended Complaint. On January 15, 2002, Smithburg and Walter moved to dismiss the Complaint by adopting the arguments set forth in a motion to dismiss filed by co-defendants Thomas Ehman and Vern Landeck. On January 18, 2002, Smithburg and Walter moved to dismiss the Amended Complaint, again adopting arguments raised by Ehman and Landeck but also raising the argument that count ten failed to allege fraud with particularity as required under Federal Rule of Civil Procedure 9(b).

**C.    The March 25, 2002 Opinion**

On March 25, 2002, Judge Bucklo granted KPMG's motion to dismiss in part. *See Wafra Leasing Corp.1999-A-1 v. Prime Capital Corp.*, 192 F.Supp.2d 852 (N.D. Ill. 2002) ("*Wafra I*")[1]. Specifically, Judge Bucklo dismissed the securities fraud claims against KPMG based on the May 4, 1999 Letter because she concluded that Wafra could not have reasonably relied on the statement that no audit had been conducted and Wafra had not identified any specific statement

---

[1] This case was pending before Judge Bucklo until August 30, 2002, when it was reassigned by order of the Executive Committee to this Court.

in the May 4 Letter that constituted a misrepresentation. Specifically, Judge Bucklo found:

> Wafra does not explain how it could reasonably have relied on the
> statement that no audit had been conducted in making its
> investment decision; reliance on an auditor's statement that it had
> *not* conducted an audit as confirmation that everything was okay
> with the transaction is both implausible and unreasonable.

*Wafra I*, 192 F.Supp.2d at 867. Further, Judge Bucklo noted that KPMG specifically stated in

the May 4 Letter that "it had not performed any procedures to verify the information in the

schedules provided by Prime." *Id.* In light of this disclaimer, Judge Bucklo found that Wafra

failed to identify any misleading statement in the May 4 Letter. *Id.*

In addition, Judge Bucklo held in *Wafra I* that the three year statute of repose for

securities fraud claims barred the claim against KPMG based on its 1997 audit opinion. *Wafra I*,

192 F.Supp.2d at 864. Noting that the repose period for Section 10(b) claims commences at the

time of the violation, Judge Bucklo found that the "violation" for a claim based upon a false

misrepresentation "occurs when the defendant makes a misrepresentation in connection with the

sale or purchase of securities." *Id.* at 864. Because Wafra did not file its suit against KPMG

until June 8, 2001-- more than three years after the audit opinion and the alleged

misrepresentation issued on March 27, 1998 -- Judge Bucklo held that the statute of repose

barred the Section 10(b) claims based on that audit. *Id.* at 864-65.

**D.    May 24, 2002 Opinion**

On May 24, 2002, Judge Bucklo issued an opinion addressing Smithburg and Walter's

arguments to dismiss count ten of the Amended Complaint. *Wafra Leasing Corp. 1999-A-1 v.*

*Prime Capital Corp.*, 204 F.Supp.2d 1120, 1126 (May 28, 2002) ("*Wafra II*"). In *Wafra II*,

Judge Bucklo held that Wafra had not pled with particularity its ICFA claim as to Smithburg and

6

Walter. Wafra had alleged that Smithburg and Walter were "control persons" involved in the day-to day management of Prime and that the two men were involved in the preparation of the financial statements, including the 1997 and 1998 annual 10-Ks containing the allegedly false and misleading statements. Although she found that the complaint satisfied the who, what and when elements, Judge Bucklo held that Wafra had failed to allege that Smithburg's and Walter's signature on and implicit approval of the 10-K reports was false. Specifically, Judge Bucklo found that Wafra had not made any "allegation that they knew, or ever should have known about the kiting scheme that the 10-K reports failed to disclose." *Wafra II*, 204 F.Supp.2d at 1126. Judge Bucklo observed that Wafra's allegations that "Smithburg and Walter were merely involved in the day-to-day operation of Prime is insufficient to plead the 'how' of the fraud under Rule 9(b). *Id.* Accordingly, Judge Bucklo dismissed the ICFA claim as to Smithburg and Walter.

### E. Second Amended Complaint

In an attempt to cure the defects noted by Judge Bucklo in *Wafra I* and *Wafra II*, Wafra filed a Second Amended Complaint. Specifically, Wafra amended count eight -- for securities fraud violations against KPMG -- to include a specific misrepresentation in KPMG's May 4, 1999 Letter. (R. 89-1, Second Am. Compl., ¶¶ 151-159.) Wafra also amended count ten, adding an allegation that Smithburg and Walter "knew or, in the alternative, should have known about Prime's Diversion, Misappropriation and Kiting scheme." (*Id.* ¶ 100.) Finally, Wafra added a count eleven, alleging that KPMG violated Section 10(b) and Rule 10b-5 but raising an alternative theory of liability.

In count eleven, Wafra alleged that KPMG believed the statements in the 1997 audit report "to be true at the time when it made them," but that "[a]t some point subsequent to September 1998 and before the closing of the 1999-A securitization on May 4, 1999, KPMG learned of Prime's Diversion, Misappropriation and Kiting scheme." (R. 89-1, Second Am. Compl., ¶¶ 188-89.) Wafra further alleged that KPMG "knew that Plaintiff was relying on these 1997 statements in making its decision whether to invest in the 1999-A Securitization," and therefore had a "duty to correct" its statements pertaining to the 1997 financial statements. (Id. at ¶¶ 190-91.) Wafra claimed that KPMG violated its duty to correct by failing to correct the 1997 financial statements. (Id.)

## ANALYSIS

### I.    Legal Standards

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Associates, Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989); *Majchrowski v. Norwest Mortgage*, 6 F.Supp.2d 946, 952 (N.D. Ill. 1998). In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). The court views all the facts alleged in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to the plaintiff, and construes the allegations liberally. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996); *Tatz v. Nanophase Tech. Corp.*, 2002 WL 31269485 at *3 (N.D. Ill. Oct. 9, 2002). Dismissal is appropriate only where it appears

beyond doubt that under no set of facts would plaintiff's allegations entitle him to relief. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. Nat'l Juvenile Det. Assoc.*, 187 F.3d 690, 695 (7th Cir. 1999). The complaint, however, must allege the elements of each cause of action in order to withstand a motion to dismiss. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992).

## II. KPMG's Motion to Dismiss

KPMG argues that Plaintiff has failed to state a claim against it with counts eight and eleven of the Second Amended Complaint. Both counts allege securities fraud in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5. The elements of a Section 10(b) claim are that: (1) the defendant made a false statement or omission; (2) of a material fact; (3) with scienter; (4) in connection with the purchase or sale of securities; (5) upon which the plaintiff justifiably relied; (6) and the false statement proximately caused the plaintiffs' damages. *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997). *See also Tatz v. Nanophase Technologies Corp.*, 2002 WL 31269485, at *4 (N.D. Ill. Oct. 9, 2002).

### A. Count Eight -- Securities Fraud

Count eight premises its theory of liability against KPMG on KPMG's May 4 Letter. The May 4 Letter is addressed to Prime leasing, Prime Finance Corporation 1999-A-1, Prime Financing corporation 1999-A-2 and Merrill Lynch & Co. (*See* R. 101-1, KPMG's Mem. of Law in Support of Mot. to Dismiss, Ex. A.) Wafra was not an addressee of the May 4 Letter. In the May 4 Letter, KPMG states that it performed certain "agreed-upon procedures" "in accordance with standards established by the American Institute of Certified Public Accountants." (*Id.*) KPMG specifically included the following disclaimer in the letter: "The sufficiency of the

procedures is solely the responsibility of the addressees of the report. Consequently, we make no representation regarding the sufficiency of the procedures described below either for the purpose for which this report has been requested or for any other purpose." (*Id.*) Moreover, KPMG noted that it was "not engaged to perform an audit, the objective of which would be the expression of an opinion on the specified elements, accounts, or items. Accordingly, we do not express such an opinion. Had we performed additional procedures, other matters might have come to our attention that would have been reported to you." (*Id.* at 6.) Finally, KPMG expressly disclaimed: "***This report is intended solely for the use of the addressees and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes.***" (*Id.* (emphasis added).)

KPMG argues that Wafra fails to state a claim for securities fraud because of the express disclaimers and limitations contained in the May 4, 1999 Letter. KPMG further contends that the statement upon which Plaintiff relies is not misleading, that Wafra could not reasonably have relied on any statements in the May 4, 1999 Letter, and that Wafra has failed to allege scienter with particularity.

Wafra, of course, argues that count eight does state a cause of action for securities fraud. Wafra contends that count eight alleges an express misrepresentation in the May 4 Letter by KPMG upon which Plaintiff reasonably relied. The May 4 Letter states that it "was performed in accordance with standards established by the American Institute of Certified Public Accountants ("AICPA")." (*See* R. 101-1, KPMG's Mem. of Law in Support of Mot. to Dismiss, Ex. A, at 1.) Plaintiff argues that SAS No. 75 is the standard governing the May 4 Letter and, therefore, the SAS No. 75 standards are incorporated by reference in the May 4 Letter. SAS No. 75 provides

10

that if an accountant "becomes aware of a potentially material adjustment to that account by means other than performance of the agreed-upon procedures, the accountant should include this matter in his or her report." (R. 101-1, KPMG's Mem. of Law in Support of Mot. to Dismiss, Ex. B, at 1073.) Wafra alleges that KPMG represented in the May 4 Letter that it was not aware of any information that would "significantly contradict" the "bases for accounting" used by KPMG or of any "potentially material adjustment" to the accounts that were the subject of the May 4 Letter. (R. 89-1, Second Am. Compl., ¶ 153.) Wafra contends that KPMG knew of the cash flow diversion by Prime and failed to disclose it as required by SAS No. 75, and that KPMG affirmatively misrepresented that the May 4 Letter complied with the AICPA standards and the requirements of SAS No. 75. (*Id.* ¶¶ 153-159.)

However, the very accounting provision upon which Plaintiff relies, as well as the plain language of the May 4 Letter, defeat Wafra's argument that it could have reasonably relied upon the May 4 Letter. SAS No. 75 specifically provides that "[a]s a consequence of the users' role in agreeing upon the procedures performed or to be performed, an accountant's report on such engagements should clearly indicate that its use is *restricted to those users.*" (R. 101-1, KPMG's Mem. of Law in Support of Mot. to Dismiss, Ex. B, at 1062.) In accordance with this provision, the May 4 Letter specifically notes: "This report is intended solely for the use of the addresses and should not be used by those who have not agreed to the procedures and taken responsibility for the sufficiency of the procedures for their purposes." (*Id.*, Ex. A, at 2.) Wafra was not an addressee of the May 4 Letter. Moreover, Wafra does not allege that it agreed to the procedures

outlined in the May 4 Letter or that it took responsibility for the sufficiency of the procedures. Thus, Wafra could not have reasonably relied on KPMG's representations in the May 4 Letter.[2]

## B.    Count Eleven -- An Alternate Theory of Securities Fraud

With count eleven, Wafra alleges in the alternative that KPMG had a duty to correct its 1997 audit but failed to do so.  Specifically, Wafra alleges that even if KPMG believed that the statements contained in its audit report on the financial statements included in the 1997 10-K were truthful at the time they were made, KPMG learned prior to the issuance of the May 4 Letter that the statements were misleading and deceptive but failed to correct them.  Wafra further alleges that KPMG knew that it was relying on these 1997 statements in making its decision whether to invest in the 1999-A Securitization.

KPMG argues that count eleven fails to state a claim under Section 10b-5 because the claim is barred by the statute of repose.  Judge Bucklo found in *Wafra I* that the statute of repose period commenced on March 27, 1998 when KPMG issued its audited financials, and KPMG suggests that a duty to correct does not delay the running of this repose period.  KPMG further contends that Plaintiff failed to plead scienter with particularity.

### 1.    Statute of Repose

The relevant statute of repose provides that a Section 10(b) and/or Rule 10b-5 claim must be commenced within three years after the violation. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 2782 (1991).  The Supreme Court in *Lampf,* however, did not define what constitutes the "violation" for purposes of the statute of

---

[2] Because Wafra could not reasonably have relied on the representations in the May 4 Letter, the Court need not address the sufficiency of Wafra's allegations of misrepresentations or scienter in count eight.

repose. The question, therefore, is what constitutes the violation that triggers the statute of

repose period for a Section 10(b) and/or Rule 10b-5 claim premised on an alleged violation of the

"duty to correct" -- the time the alleged misrepresentation was originally made or the time when

duty to correct arose.

In *Wafra I*, Judge Bucklo held that "the 'violation' for the purposes of the Rule 10b-5

statute of repose occurs when the defendant makes a misrepresentation in connection with the

sale or purchase of securities; the sale itself need not have occurred to start the running of the

repose period." *Wafra I*, 192 F.Supp.2d at 864. *See also Stauffer v. Westmoreland Obstetric &*

*Gynecologic Assocs.*, 2001 WL 585510, at *5 (N.D. Ill. May 25, 2001). Because the alleged

misrepresentation occurred when KPMG issued the 1997 audit on March 27, 1998, Judge Bucklo

dismissed the claims against KPMG based on the 1997 audit because those claims had been filed

more than three years after the alleged misrepresentation.

In the context of a securities fraud claim, the duty to correct "applies when a company

makes a historical statement that, at the time made, the company believes to be true, but as

revealed by subsequently discovered information, actually was not. The company then must

correct the prior statement within a reasonable time." *Stransky v. Cummins Engine Co., Inc.*, 51

F.3d 1329, 1332 (7th Cir. 1995). Because the company believed that its misrepresentation was

true at the time it was made, the company's conduct would not be actionable under Section 10(b)

and/or Rule 10b-5 at the time the misrepresentation was originally made. *See Lampf,* 501 U.S. at

377 (Section 10(b) requires "scienter on the part of the defendant").

As Wafra alleges in the alternative in count eleven, there was no "violation" when KPMG

issued its audit report on the 1997 financial statements because KPMG believed, at the time, that

13

the statements contained in the audit report were true. There can be no "violation" under the duty to correct theory until it was "revealed by subsequently discovered information" that the 1997 audit report contained a material misrepresentation. *Cf. Stransky*, 51 F.3d at 1332. However, Wafra alleges that if KPMG did not know of the misrepresentation at the time it issued the 1997 audit report, KPMG became aware of the misrepresentation at some time between September 1998 and May 4, 1999. Because Wafra alleges that the duty to correct was triggered sometime after September 1998, its lawsuit, filed less than three years later in June of 2001, does not run afoul of the statute of repose.[3]

## 2. Scienter

KPMG also argues that KPMG has failed to plead with particularity the element of scienter. Under Section 10(b), scienter is either "the intent to deceive, manipulate or defraud", *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976), or the "reckless disregard for the truth of the material asserted." *SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998). Because Wafra claims a securities fraud violation, both the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA") apply.

Rule 9(b) requires that a plaintiff plead "the circumstances constituting fraud . . . with particularity." *See In re HealthCare Compare Corp. Sec. Litig.*, 75 F.3d 276, 281 (7th Cir. 1996).

---

[3] KPMG's reliance on *In re Westinghouse Sec. Litig.*, 832 F.Supp. 989 (W.D. Pa. 1993), is misplaced. As Wafra points out, *Westinghouse* involved a derivative lawsuit under Section 14(a) of the Exchange Act, not a Section 10(b) claim. Section 14(a) does not require proof of scienter; instead, a violation occurs under Section 14(a) "when the false or misleading proxy statement is issued," regardless of whether the individual filing the proxy statement knew it was false or misleading. *Id.* at 999. Thus, any duty to correct theory upon knowledge of the false or misleading statements would not change the date of the violation. In contrast, a Section 10(b) claim requires scienter, and, thus the violation does not occur until the scienter element exists.

As explained by the Seventh Circuit, "this means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7 th Cir.1990). This particularity mandate requires "the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Northwestern Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). The particularity requirements of Rule 9(b), however, do "not require 'particularity' with respect to the defendants' mental state." *DiLeo*, 901 F.2d at 629. Instead, the allegations in the complaint need only "afford a basis for believing that the plaintiff[] could prove scienter." *Id. See also Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 650 n.7 (7th Cir. 1997). The PSLRA also imposes heightened pleading requirements for scienter. Specifically, the PSLRA requires that a plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Seventh Circuit has not yet addressed the the heightened pleading requirement for scienter under Rule 9(b) and the PSLRA. Several courts in this district have followed a standard adopted by the Second Circuit, which requires that a plaintiff allege either: (1) facts showing that the defendants had both motive and opportunity to commit fraud; or (2) facts constituting strong circumstantial evidence of conscious misbehavior or recklessness. *See, e.g., Riggs Partners, LLC. v. Hub Group, Inc.*, 2002 WL 31415721, at *4 (N.D. Ill. Oct. 25, 2002); *Lindelow v. Hill*, 2001 WL 830956, at *6 (N.D. Ill. July 20, 2001). *See also Press v. Chemical Investment Serv. Corp.*, 166 F.3D 529, 538 (2nd Cir. 1999) (citations and quotations omitted). Although the Second Circuit's standard is instructive, this Court declines to adopt that standard for the reasons

15

expressed by Judge Castillo in *Chu v. Sabratek Corp.*, 100 F.Supp.2d 815, 823 (N. D. Ill. 2000). Judge Castillo explained:

> [T]he PSLRA's only requirement is that the facts alleged must give rise to a "strong inference" of the defendant's scienter. The types of facts with which a plaintiff pleads scienter factor little into our analysis, as long the overall facts give rise to a "a strong inference" of scienter. Thus, a plaintiff may use "motive and opportunity" or "circumstantial evidence" to establish scienter under the PSLRA, as long as those facts support a strong inference "that the defendant acted recklessly or knowingly."

*Id.*, at 823. Thus, this Court will view the scienter allegations in the Second Amended Complaint in light of the plain language of the statute.

It is clear that mere allegations that a defendant violated accounting standards such as GAAS and AICPA are generally insufficient, standing alone, to create a strong inference of scienter. *See, e.g., Geinko v. Padda*, 2001 WL 1163728, at *4 (N.D. Ill. Sept. 28, 2001). Such violations, however, are relevant in proving scienter "when the complaint also identifies 'red flags,' or specific, highly suspicious facts and circumstances available to the auditor at the time of the audit, and alleges that these facts were ignored, either deliberately or recklessly." *Riggs Partners, LLC. v. Hub Group, Inc.*, 2002 WL 31415721, at *9 (N.D. Ill. Oct. 25, 2002). In the context of outside auditors, recklessness means that "the accounting firm practices amounted to no audit at all, or to an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *In re First Merchants*, 1998 WL 781118, at *10 (N.D. Il. Nov.4, 1998) (*citing SEC v. Price Waterhouse,* 797 F.Supp. 1217, 1240 (S.D.N.Y. 1992)).

Wafra's allegations in count eleven are premised on the theory that KPMG did not have

16

the requisite scienter at the time KPMG issued its 1997 Audit opinion, but that KPMG subsequently developed scienter sometime during the period from September 1998 when Prime Capital began putting the 1999-A Securitization together and May 4, 1999 when the 1999-A Securitization closed. (R. 89-1, Second Am. Compl., ¶ 189.) Wafra supports this contention, in part, by the timing of the audit report on Prime's 1998 financial statements, which was released just sixteen days after the May 4, 1999 closing. Wafra points to the substantial delay in the release of the 1998 audit as evidence that KPMG was aware of the fraud prior to the closing on May 4, 1999. (*Id.* ¶ 147.) Further, Wafra suggests that the inclusion of an "intentionally obscure note" in the 1998 10-K confirms that KPMG was aware of the alleged fraud prior to the filing of the 1998 10-K. This "intentionally obscure note" disclosed that as December 31, 1997, Prime Capital had some $3.5 million on hand that should have been transferred to the SPVs in 1997. (*Id.*) Thus, Wafra argues that KPMG actually knew about the fraud revealed in its 1998 audit and that KPMG had a duty to correct its 1997 audit prior to the closing.

Taken as a whole, this Court concludes that Wafra's allegations satisfy the heightened pleading requirements for scienter under Rule 9(b) and the PSLRA and support a strong inference of recklessness by KPMG. *See Ackerman*, 947 F.2d at 848-49 (if defendant "came to doubt the representations in his letter but continued to allow its circulation, this may be powerful evidence of recklessness"). Accordingly, KPMG's motion to dismiss count eleven is denied.

### III. Smithburg and Walter's Motion to Dismiss

Smithburg and Walter have moved to dismiss the Second Amended Complaint, arguing that Wafra has failed to allege fraud with particularity. Although they suggest that they seek to

dismiss only count ten which alleges an ICFA violation, it seems that Smithburg and Walter actually seek to dismiss the securities fraud claims in counts one and two as well.

## A.    Counts One and Two -- Securities Fraud Claims

This is actually Smithburg and Walter's third motion to dismiss for failure to state a claim. On January 15, 2002, they moved to dismiss the Complaint, adopting the arguments made by Ehman and Landeck. After Wafra filed an Amended Complaint (adding a new count ten) on January 15, 2002, Smithburg and Walter filed another motion to dismiss, again adopting arguments raised by Ehman and Landeck but also raising additional arguments concerning count ten. Smithburg and Walter have now moved to dismiss the Second Amended Complaint, raising arguments with respect to counts one and two that they failed to advance in either of their previous motions to dismiss.

Rule 12(g) provides that "[i]f a party makes a motion under this rule but omits there from any defense or objection then available to the party which this rule permits to e raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Fed. R. Civ. P. 12(g). Thus, Rule 12(g) generally precludes a defendant from bringing successive motions to dismiss raising arguments that the defendant failed to raise at the first available opportunity. *See Albany Insc. Co. v. Almacenadora Somex*, 5 F.3d 907, 909 (5th Cir. 1993)

Rule 12(h)(2) provides that where a defendant fails to raise a defense or objection in an initial motion to dismiss for failure to state a claim, the defendant does not waive it. Instead, the

18

defendant may make such an argument "in any pleading permitted or ordered under Rule 7(a)[4], or by motion for judgment on the pleadings, or at the trial on the merits." Fed.R.Civ.P. 12(h)(2). Under Rule 12(g), however, the defendants may not "assert the defense by a second pre-answer motion" because Rule 12(g) expressly precludes the defendant from doing so. Wright & Miller, §1392. "The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to amendment." Wright & Miller §1388. *See also Harris Bank v. Pachaly*, 902 F.Supp. 156 (N.D. Ill 1995); *Dee-K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 985 F.Supp. 640, 642 n.2. (D. Va. 1997).

Because Smithburg and Walter did not raise before the arguments they make now regarding counts one and two, Smithburg and Walter are precluded from raising these arguments in this their third motion to dismiss. Accordingly, Smithburg and Walter's motion to dismiss counts one and two of the Second Amended Complaint is denied.

**B.      Count Ten -- Illinois Consumer Fraud Act**

In *Wafra II*, Judge Bucklo dismissed count ten as to Smithburg and Walter for failure to plead fraud with particularity. Judge Bucklo found that the complaint satisfied the who, what and when components of fraud under Rule 9(b), but held that Wafra had failed to satisfy the "how" element. Specifically, Judge Bucklo found that Wafra had not made any "allegation that they knew, or ever should have known about the kiting scheme that the 10-K reports failed to disclose." 204 F.Supp.2d at 1126. In an attempt to remedy this defect, Wafra has added an

---

[4] Rule 7(a) provides, in relevant part: "There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an anser to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served." Fed. R. Civ. P. 7(a).

allegation that Smithburg and Walter "knew or, in the alternative, should have known about Prime's Diversion, Misappropriation and Kiting scheme." (R. 89-1, Second Am. Compl., ¶ 100.)

To state a cause of action under the ICFA, a plaintiff must allege: (1) a misrepresentation or concealment; (2) of a material fact; (3) made with the intent to induce reliance; and (4) in a course of conduct involving trade or commerce. *Gelco Corp. v. Major Chevrolet, Inc.*, 2002 WL 31427027, at*10 (N.D. Ill.). ICFA claims must satisfy the heightened pleading requirements under Rule 9(b). *Unique Coupons, Inc. v. Northfield Corp.* 2000 WL 631324, at *3 (N.D. Ill. 2000). Because count ten alleges an ICFA violation and not a federal securities fraud claim, however, the heightened pleading requirements under the PSLRA do not apply.

As an initial matter, this Court previously denied Smithburg and Walter's Motions to Strike Additional Affirmative Matter in Plaintiff's Reply, noting that the exhibits attached to Wafra's opposition to the motion dismiss, as well as any facts derived from these exhibits, may be considered in deciding the motion to dismiss. Indeed, a party "need not put all of the essential facts in the complaint; he may add them by affidavit or brief" as long as the "facts are consistent with the allegations of the complaint." *Help At Home Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 752-53 (7th Cir. 2001). *See also Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, *963 (1992) ("A plaintiff need not put all of the essential facts in the complaint. He may add them by affidavit or brief"); *Anzaldua v. Chicago Transit Authority*, 2002 WL 31557622, at *2 (N.D. Ill.) ("We will consider additional information in a responsive brief to a motion to dismiss to the extent that it is supplemental and consistent with the complaint and clarifies the

information in the complaint. However, we will not consider additional information in the response that is inconsistent with the complaint, expands the plaintiff's case, or concerns new claims and new topics.").

Smithburg and Walter correctly note that conclusory allegations without any factual support are insufficient to satisfy the demands of Rule 9(b). *See Robin v. Arthur Young & Co.,* 915 F.2d 1120, *1127 (7th Cir. 1990) ("Plaintiffs must provide more than conclusory allegations to satisfy rule 9(b)'s requirement that the circumstances of the fraud be pleaded with particularity"). But here, Wafra has offered more than bold, unsupported allegations.

Wafra alleges that both Walter and Smithuburg were members of Prime Capital's Board of Directors. In addition, Walter served on Prime Capital's Board's Executive Committee and the Proxy Committee from 1998 until 2000. (*See* R. 89-1, Pl.'s Reply in Opp. to Defs.' Opp. to Mot. for Leave to File Second Am. Compl., Ex. A.) Smithburg served on Prime Capital's Board and was a member of its Audit Committee, Executive Committee, Proxy Committee and Compensation Committee at times relevant to the complaint. (*Id.*) The Audit and Executive Committee allegedly had critical roles in overseeing Prime Capital's business and accounting practices, including "reviewing the methods used and examinations made by the auditors in connection with the Company's published financial statements." (*Id.*) Thus, the Second Amended Complaint and the exhibits attached to Wafra's opposition to the motion to dismiss, allege that Smithburg and Walter knew or should have known about the kiting scheme that the 10-K reports failed to disclose.

Accordingly, Smithburg and Walter's motion to dismiss count ten is denied.

## CONCLUSION

For the reasons stated above, Defendant KPMG's motion is granted in part and denied in part, and Defendants Smithburg and Walter's motion is denied.

Dated: November 25, 2002           ENTERED:

AMY J. ST. EVE
United States District Judge