# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4314 | **DATE** | 10/12/2004 |
| **CASE TITLE** | Wafra vs. Prime Capital | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motion in limine regarding damages is granted in part and deferred in part.

*Amy J. St. E*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 13 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | rbf | 310 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | TH / courtroom deputy's initials | 2004 OCT 12 PM 12:31 U.S. DISTRICT COURT | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
OCT 1 3 2004

| | |
|---|---|
| WAFRA LEASING CORPORATION 1999-A-1,<br><br>Plaintiff,<br><br>v.<br><br>PRIME CAPITAL CORPORATION, PRIME LEASING CORPORATION, PRIME FINANCE CORPORATION 1999-A-1, PRIME FINANCE CORPORATION 1999-A-2, KPMG LLP, MARK BISCHOFF, JAMES FRIEDMAN, VERN LANDECK, THOMAS EHMANN, WILLIAM SMITHBURG,<br><br>Defendants. | No. 01 C 4314 |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Wafra Leasing Corporation 1999-A-1 ("Wafra") filed suit against Defendants Prime Capital Corporation, Prime Leasing Corporation, Prime Finance Corporation 1999-A-1, Prime Finance Corporation 1999-A-2 (collectively, the "Prime Defendants"), KPMG LLP ("KPMG"), Bischoff & Swabowski, LTD ("B&S"), Mark Bischoff, James Friedman, Vern Landeck, Thomas Ehmann, William Smithburg, and John Walter.[1] Defendants KPMG, Bischoff, Friedman, Smithburg, Landeck, and Ehmann ("Moving Defendants") move the Court *in limine* pursuant to Rules 402 and 403 of the Federal Rules of Evidence to limit Wafra to its "out of pocket" damages and cap those damages at $1,371,376. For the reasons set forth below, the

---

[1] As a result of the Court's August 30, 2004 ruling, Defendants B&S and Walter are no longer parties to this case. (R. 253-1, Ct.'s August 30, 2004 Order.)

1



Moving Defendants' Motion is granted in part and deferred in part.

## BACKGROUND

The Court's previous rulings regarding summary judgment, *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 2004 WL 1977572 (N.D. Ill. Aug. 31, 2004) and the multiple motions to dismiss, *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 247 F. Supp. 2d 987 (N.D. Ill. 2002); *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 192 F. Supp. 2d 852 (N.D. Ill. 2002), address the procedural and factual background in detail. The Court sets forth the facts relevant to this Motion below.

### I. The Moving Defendants

Defendant KPMG served as auditors and principal accounting firm to Prime Capital. (R. 131-1, Third Am. Compl. ¶11.) Defendant Bischoff was a member of the Board of Directors of Prime Capital and of the Audit Committee of the Board, Secretary of the Board, and Outside General Counsel to Prime Capital, as well as a large shareholder in Prime Capital. (*Id.* ¶12.) Defendant Friedman was a member of the Board of Directors and Chairman of the Executive Committee of the Board, and the President and Chief Executive Officer of Prime Capital, as well as its largest shareholder. (*Id.* ¶14.) Defendant Landeck was Vice President and Chief Financial Officer of Defendant Prime Capital. (*Id.* ¶15.) Defendant Ehmann was Vice President of Finance of Prime Capital. (*Id.* ¶16.) Defendant Smithburg was a member of the Board of Directors of Prime Capital and of the Executive and Audit Committees of the Board. (*Id.* ¶17.)

### II. The 1999-A Securitization

Wafra invested $5,550,497 into the 1999-A Securitization, a pool of financial contracts consisting of equipment leases, loans, and installment purchase agreements from which

2

promissory notes could be issued. (R. 258-1, Def.'s Mot. at 2; R. 131-1, Third Am. Compl. ¶34.) Under the 1999-A Securitization, Wafra was to receive repayment of its principal, plus an investment return consisting of interest payments until the principal was paid. (R. 281-1, Pl.'s Resp. at 2.) Wafra purchased the Owner Certificate from Prime Finance Corporation 1999-A-1 and 1999-A-2. The Owner Certificate is dated May 4, 1999 and signed by an officer of Prime. (R. 131-1, Third Am. Compl. ¶37.) Prime stopped making principal payments in May 2002, but continues to make "interest" payments at a consistent rate. (R. 258-1, Def.'s Mot. Ex. A.)

## ANALYSIS

### I. Legal Standard

The Moving Defendants bring this motion *in limine* to limit Plaintiff to its "out of pocket" damages of $1,373,376. It is clear that courts have the power to exclude evidence *in limine* under their authority to manage trials. *Aguilar v. Dixon*, No. 93 C 1936, 1995 WL 319621, at *3 (N.D. Ill. May 25, 1995) ("Pursuant to its power to manage trials, the court may exclude evidence in limine"). Courts should grant such motions, however, "only when evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Furthermore, courts often defer evidentiary rulings "until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Id.*; *see also Noble v. Sheahan*, 116 F.Supp.2d 966, 969 (N.D. Ill. 2000).

Because neither Section 10(b) of the Securities Exchange Act of 1934 ("the Act") nor Rule 10b-5 provide instructions concerning damages, courts have applied the damages standard of Section 28 of the Act. *Pelletier v. Stuart-James Co.*, 863 F.2d 1550, 1557 (11th Cir. 1989). Section 28(a) of the Act limits damages to "actual damages." *See Astor Chauffeured Limousine*

3

*Co. v. Runnfeldt Inv. Corp.*, 910 F.2d 1540, 1551 (7th Cir. 1990) ("The federal securities laws allow victims of fraud to recover their actual loss – the difference between what they paid for the stock and what it was worth.") The general rule for calculating damages under Section 10(b) is to take the plaintiff's "out of pocket" damages. *See Madigan, Inc. v. Goodman*, 498 F.2d 233 (7th Cir. 1974). "Out of pocket" damages are calculated as the difference between the plaintiff's investment and any value the plaintiff received as a result of that investment. *Astor*, 910 F.2d at 1551.

Nonetheless, courts have recognized certain exceptions to that general rule. When a plaintiff can prove that it struck a bargain for a reasonably certain and non-speculative expectation, the plaintiff can seek to recover for the lost value of that expectation. *See Osofsky v. Zipf*, 645 F.2d 107, 113 (2nd Cir. 1981). These "benefit of the bargain" damages are calculated by the difference between the value of what the plaintiff received and what it was represented he or she would receive. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, No. 87 C 9853, 1989 WL 134846, *3 (N.D. Ill. Oct. 19, 1989). Courts have also departed from the "out of pocket" general rule when a defendant would be unjustly enriched if its profits were not disgorged. *Janigan v. Taylor*, 344 F.2d 781 (1st Cir. 1965).

## II. Analysis

The Moving Defendants first argue that the Seventh Circuit only recognizes "out of pocket" damages calculations for §10b-5 securities fraud remedies. *Astor*, 910 F.2d at1552.[2] In

---

[2]The Court does not view *Astor* as foreclosing "benefit of the bargain" damages when the factfinder can determine such damages with reasonable certainty. Also, the Moving Defendants overstate the Court's ruling in its August 30, 2004 Order. Contrary to the Moving Defendants' assertion, that Order did not limit Plaintiff to its "out of pocket" damages. This Motion, therefore, presents the issue whether the facts of this case could give rise to a reasonably certain

4

reply to Wafra's opposition to this Motion, the Moving Defendants argue in the alternative that even if certain exceptions to the general rule of "out of pocket" damages do exist, none of the exceptions apply to the facts of this case. Under the Moving Defendants' proposed damages calculation, of the $5,550,497 invested by Wafra, Defendants will have repaid $4,179,121 by the time of trial. Wafra is therefore "out of pocket" $1,371,376, and the Court should cap its damages accordingly.

The Moving Defendants also argue that the Seventh Circuit's decision in *Sanders v. John Nuveen & Co.*, 524 F.2d 1064 (7th Cir. 1975), forecloses Wafra's alleged bargained-for interest payments as part of an actual damages calculation. Rather, the Moving Defendants contend, the Court should instruct the jury to not consider either the time-value of money or any interest Wafra would have earned on its $5,550,497 but for Defendants' alleged fraud. Therefore, according to the Moving Defendants, any additional loss related to the time value of money or lost interest on the part of Wafra is an issue related to prejudgment interest for the Court to decide.

In contending that it is entitled to at least $3,412,416 from Defendants, Wafra points to several exceptions to the general rule limiting damages under §10b-5 to "out of pocket" damages. These exceptions fit into two general categories: (1) an unjust enrichment or disgorgement damages calculation; and (2) a "benefit of the bargain" damages calculation.

### A. Wafra Cannot Recover on an Unjustment Enrichment or Disgorgement Theory from the Moving Defendants

The Court first addresses Wafra's argument related to unjustment enrichment or disgorgement damages theories because it can resolve this issue for each of the Moving

---

damages calculation other than "out of the pocket" damages.

Defendants. Wafra contends that it can recover its actual damages that are calculated from Defendants' profits from the alleged fraud. (R. 281-1, Pl.'s Resp. at 6.) An unjust enrichment or disgorgement theory of damages under Section 10(b) is based on the principle that "to allow violators of the Act to profit by their misconduct would undermine the deterrence that the Act was intended to effect." *Nelson v. Serwold,* 576 F.2d 1332, 1339 (9th Cir. 1978). Wafra points to "the amounts diverted by virtue of the fraud (demonstrably in excess of $5 million from the 1999-A securitization's cash flow)" and that "far exceed Wafra's lost principal of $3,412,416." (R. 281-1, Pl.'s Resp. at 6.) Wafra, however, also acknowledges that these diverted funds "remain[ed] in the pockets of the corporate defendants [that the Moving Defendants allegedly] operated, represented and serviced." (*Id.* at 5.) Wafra does not point to any profits that were unjustly kept by any of the Moving Defendants in their individual capacities (or corporate capacity in the case of KPMG). Any damages theory related to unjustment enrichment or disgorgement is, therefore, irrelevant with respect to the Moving Defendants.

Accordingly, unless Wafra can show a reasonably certain damages calculation related to a "benefit of the bargain" approach, it is limited to its "out of pocket" damages for each of the Moving Defendants.

### B. "Benefit of the Bargain" Damages Require that the Defendant was a Party to the Bargain

Wafra's arguments related to a "benefit of the bargain" damages theory generally state that Wafra had an agreement to receive a fixed interest payment each month along with the return of its principal, and it is not speculative to award Wafra a return of this expectation. In support of its contention that its bargained-for expectation is not speculative, Wafra argues that it had a

6

contractual relationship with Defendants that laid out Wafra's specific bargained-for expectation. (R. 281-1, Pl.'s Resp. at 2-4.) Wafra also argues that the nature of the security was relatively certain, unlike a stock purchase situation, and that Defendants have continued to make set monthly interest payments that conclusively demonstrate Wafra's expectation. (*Id.* at 7-13.)

A prerequisite for "benefit of the bargain" damages is the existence of a bargain, or a contract. *Pelletier*, 863 F.2d at 1559 (denying benefit of the bargain damages because the underlying contract was ruled unenforceable); *see also Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 59-60 (2nd Cir. 1984) ("A claim for benefit-of-the-bargain damages must be based on the bargain that was actually struck"). Indeed, while "out of pocket" damages are based in tort theory, "benefit of the bargain" damages are "an outgrowth of contract principals." *Panos v. Island Gem Enterprises, Ltd.*, 880 F. Supp. 169, 176 (S.D.N.Y. 1995). Because of this basis of "benefit of the bargain" damages in contract theory, it would be unfair for a plaintiff to collect "benefit of the bargain" damages from a defendant that was not a party to the bargain. As the Third Circuit has observed, in Rule 10b-5 cases other courts "have been unanimous in limiting damages [to "out of pocket" losses] in all cases except those where the defendant was a broker-dealer or the plaintiff and defendant were in privity." *Scattergood v. Perelman*, 945 F.2d 618, n. 2 (3rd Cir. 1991). The Court agrees with the reasoning in *DeBartolo Corp. v. Coopers & Lybrand*, which held that "a plaintiff cannot recover benefit of the bargain damages from a defendant who was not a party to the underlying agreement." 928 F. Supp. 557, 566 (W.D. Pa. 1996) (referencing comment g to the Restatement (Second) of Torts § 549 limiting benefit of the bargain damages in fraud cases to the situation where the plaintiff has made a bargain with the defendant").

Therefore, to the extent a Moving Defendant was not a party to a bargain with Wafra, "benefit of the bargain" damages are not available with respect to that defendant. While Wafra points to the Owner Certificate as the express bargain between itself and defendants, this document, on its face, only represents a bargain between Defendants Prime Finance Corporation 1999-A-1 and 1999-A-2 and Wafra. (R. 288-1, Def. Reply Ex. 1.) Wafra also points to the Court's Order of September 13, 2004 granting Wafra's motion for partial summary judgment of breach of contract. The breach of contract claim, however, was only with respect to the Prime Defendants, and not any of the Moving Defendants here. Additionally, the interest payments that Wafra continues to receive are being paid by the Prime Defendants, not any of the Moving Defendants. The Court addresses the availability of "benefit of the bargain" damages for the specific Moving Defendants below.

### 1. Defendant KPMG

KPMG was merely the auditor to Prime. It is undisputed that Prime was not a party to any bargain with Wafra. (R. 252-1, Ct.'s Aug. 27, 2004 Order at 22-23.) Accordingly, Wafra cannot collect "benefit of the bargain" damages from KPMG. The Moving Defendants' Motion *in limine* to limit Wafra to its "out of pocket" damages is granted with respect to KPMG.

### 2. The Other Moving Defendants

Initially, it does not appear from the record that any of the Moving Defendants were expressly listed as parties to any bargain with Wafra. Under the general rule of a contract analysis under Illinois law, this is compelling evidence that no enforceable bargain relationship exists between Wafra and any of the Moving Defendants, in their individual capacities. *See Media Comm., Inc. v. Multimedia, Sign Up, Inc.*, No. 99 C 5009, 1999 WL 1212652, *2 (N.D. Ill. Dec.

8

14, 1999) ("Under Illinois law, when an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound")[3] (internal citations omitted); *see also Sparks Tune-up Centers, Inc. v. Strong,* 1994 WL 188211, *4-5 (N.D. Ill. May 12, 1994) (holding that a forum selection clause was not enforceable against defendants that were not parties to the contract). Nonetheless, because it is not clear from the record the exact relationship between the Moving Defendants, other than KPMG, and Wafra, the Court defers ruling that there was no bargain that the Moving Defendants, other than KPMG, were parties to a bargain with Wafra. To the extent Wafra can not establish any such contractual privity, the Court will limit Wafra's damages to "out of pocket damages" for all of the Moving Defendants and instruct the jury accordingly.

### C. Reasonably Certain Interest Rate and Causation

To the extent Wafra intends to establish a "benefit of the bargain" damages theory with respect to the other Moving Defendants besides KPMG, the Court notes that two issues remain as to whether Wafra can establish any bargained-for expectation with the required reasonable certainty. First, it is also not clear from the record whether Wafra's allegedly bargained-for interest rate has a non-speculative value. *Osofsky,* 645 F.2d at 114 ("giving the plaintiff benefit-of-the-bargain damages is appropriate only when they can be established with reasonable certainy"). The Moving Defendants contend that there was no established interest rate while Wafra, on the other hand, argues the interest rate was "fixed" and is demonstrated by the consistent interest payments it has received.

---

[3]Under Illinois law, an exception to the general rule that an officer is not liable for his corporation's breach of contract exists when facts are proven sufficient to pierce the corporate veil. *Id.*

Second, the Moving Defendants also raise the issue of causation with respect to Wafra's allegedly expected return of interest, alleging that but for the fraud, Wafra would not have purchased the Owner's Certificate in the first instance. *Madigan,* 498 F.2d at 239 (denying lost profits damages because "had defendants told the truth, plaintiffs would have no complaint"). Moving Defendants do not specifically cite to the witness testimony they contend proves that Wafra would not have purchased the securitization but for the alleged fraud. Nonetheless, the nature of the alleged fraud in this case implies that had the alleged fraud not occurred, Wafra would not have entered into any bargain with any defendant and therefore could have no expected "benefit of the bargain."

Based on the record at hand, the Court defers ruling on these two issues. Should Wafra intend to pursue "benefit of the bargain" damages at trial, it bears the burden of satisfying each of these criteria (*i.e.,* reasonably certain rate of return and causal nexus between the alleged fraud and the lost bargain).

### D. Calculation of Wafra's "Out of Pocket" Damages

While the Moving Defendants ask the Court to "cap" Wafra's damages at $1,371,376, the Court declines to place a precise dollar value on Wafra's "out of pocket" damages theory. While the Moving Defendants contend that Prime has paid Wafra a consistent monthly interest payment since May 2002, the record shows that there was a shortfall in the payment of September 2004 which would impact the Moving Defendants' calculation. (R. 281-1, Pl.'s Resp. Ex. A.) Nonetheless, for any defendant where an "out of pocket" damages calculation applies, such damages constitute the difference between Wafra's payment for the Owner's Certificate ($5,550,497) and any monetary benefits paid to Wafra as the owner of the Owner's Certificate.

10

Nothing in this Order impacts Wafra's ability to seek prejudgment interest as provided for by the law. *Sanders v. Nuveen & Co.,* 524 F.2d 1064, 1075,76 (7th Cir. 1975) ("[I]f a defendant has deprived the plaintiff of a specific sum of money, he has also deprived the plaintiff of the interest which the money would have earned in the absence of defendant's breach of duty; unless the plaintiff is paid interest for the entire time that he is deprived of the use of his money, he will not receive full compensation"), *vacated,* 425 U.S. 929 (1976), *remanded,* 554 F.2d 790, 798 (7th Cir. 1977) (neither subsequent opinion addressing the issue of prejudgment interest).

## CONCLUSION

The Moving Defendants' Motion *in limine* to limit Wafra to its "out of pocket" damages is granted with respect to Defendant KPMG. The Motion is deferred with respect to Defendants Bischoff, Friedman, Smithburg, Landeck, and Ehmann. If Wafra contends that any of Defendants Bischoff, Friedman, Smithburg, Landeck, or Ehmann are in contractual privity with Wafra such that "benefit of the bargain" damages can be recovered from those Defendants, Wafra is ordered to provide evidence and argument by October, 18, 2004. Wafra must also include in that submission any evidence or argument related to the outstanding issues discussed in Section II. C. of this Memorandum Opinion and Order.

DATED: October 12, 2004　　　　　　　　ENTERED

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　AMY J. ST. EVE
　　　　　　　　　　　　　　　　　　　　United States District Court Judge